Thank you, Judge Smith. Good morning and may it please the Court. My name is Michaela Posner, certified law student, appearing on behalf of Petitioner Jim Brown. Mr. Route resided in Hawaii for 10 years, pursuant to the Compact of Free Association, before taking his four U.S. citizen children on a brief vacation to his native homeland of Micronesia in 2015. Three years after that vacation, Mr. Route received his first and only criminal offense. The immigration statute says that an individual is deportable if they commit a crime involving moral turpitude, quote, within five years after the date of admission. The real question in this case is whether a COPA migrant lawfully residing in the United States should be subjected to a new five-year clock with each readmission to their free association as promised by the Compact, and we believe it should not. This Court should reject the government's position for three reasons. First, aliazji does not provide a clear answer for Mr. Route's case, and to the extent it provides guidance, it supports using 2005 as the date of admission. Second, the language of the statute itself does not support the, quote, any admission rule that the government created and relied on in deciding Mr. Route's case. Third, the government's interpretation of the Act creates an unnecessary conflict with the Compact of Free Association by causing the Act to operate as a harsh penalty for COPA migrants who take advantage of the free association offered by the treaty. We ask that this Court find that, quote, the date of admission for Mr. Route is 2005, since his 2015 admission was tethered to an earlier admission and therefore should not reset the five-year clock in the statute. What's your best argument, counsel, that 2005 is the date? What's your best argument? The best argument is that aliazji does not, does not, quote-unquote, squarely govern how to decide the date of admission for non-immigrants with more than one admission where neither of those admissions is an adjustment of status. Where one of those admissions is an adjustment of status, we will concede that aliazji clearly answers how to decide that question. However, when it comes to the issue of non-immigrants with more than one admission, aliazji only provides an example, a hypothetical of what to do in that sense. You're trying to confine aliazji to its facts, but that's not how aliazji defines what its holding was. It says it's, the alien is removable if the alien committed the crime within five years after the date of the admission by virtue of which he or she was then present in the United States, and it's a specific interpretation of that language in 1227A2AI. So assuming that we take the BIA's rule of law at face value, does that end your argument? No, it does not, Judge Akuda, and one of the reasons why is because that language, when you, there's several problems with that language. First, it resurrects to any entry rule from SHANU that the BIA expressly overruled when it promulgated aliazji, and it did not restrict when SHANU could... No, it only says one date. I mean, it overruled the part of SHANU that said there could be multiple dates of admission, any date of admission, and said no, there's only one. It's the date by Your Honor, I would like to focus on page 405 of aliazji, where the BIA explains its interpretation of the statute and its meaning after the 1996 statutory change, where the language of the statute was amended to read the date of admission. And I'm on page 405 of aliazji, it says, Congress's decision to substitute the words five years after the date of admission for five years after entry had altered the grammatical structure of the phrase in a manner that undermined the any-entry rule. So by explaining how the statutory change in the language impacted the interpretation of the statute, it seems very clear from what, that the BIA no longer finds in any-entry rule, where every single entry or admission would reset this five-year clock, the plain BIA no longer finds this compatible with congressional intent from the 1996 statutory language. Now, another part of this... Are you saying, maybe I'm misunderstanding you, are you saying that aliazji is not a permissible interpretation of the statute? To the extent that it seeks to determine the date of admission by tethering it, by rather not tethering it, but relying on when it had a criminal conviction occurred. And the fact that every entry will in fact reset the clock. To the extent that that's how the BIA is arguing aliazji, that that's what it stands for, we do believe that is an impermissible interpretation of the statute. Because the language that the BIA uses in aliazji suggests that there is only one date of admission and that it is determined based on when an individual enters into the United States. To suddenly tie that to when an individual is convicted for CIMT, alters the language of the statute. And to highlight this, if our client had committed his CIMT in 2007, as opposed to 2017, but still did not receive his notice to appear until 2018, we're convinced the BIA would be here arguing that it is 2005. That is the date of admission. Meaning that a non-immigrant could simply depart the United States and return after committing a crime involving moral turpitude to obtain anew the date of admission. Counselor, I want to be sure I understand your position and your answer to Tachikuda. I understand that you disagree with aliazji in terms of what it says. But are you really saying that it is an impermissible interpretation of the regulation? When it is applied to non-immigrants with multiple admissions. And on what do you base that? We base that on the fact that the BIA itself interpreted the statute and understands the statute in a similar manner that we do. That there is only one date of admission. It is based on when an individual enters into the United States. There are countless BIA decisions that say it is based on admission plus presence. To suddenly erase all of that and reset it just because an individual takes a brief vacation, it seems to undermine the fact. It resurrects this any entry rule that the BIA expressly did away with because they no longer see it as compatible with the language of the statute. In reality, your honor, we are really asking this court to hold the BIA to its own word in aliazji. To the extent that aliazji is not clear, we're not sure exactly how it governs. This court should require the BIA to clarify its own precedent and its own decision. So what I understand you to be saying is you obviously strongly disagree with what the BIA did. You're saying that what it decided and said earlier is a better interpretation. But it is a matter of interpretation, even if it's not one that you agree with. It doesn't make it illegal, does it? It just means you don't agree with them. Well, I'm not sure that the BIA's interpretation would be illegal, rather improper and not warrant deference from this court. What about a Chevron analysis? Do you agree that the regulation is ambiguous? The regulation or the statutory language? Your honor, we believe that the statutory language is very clear. That it only understands that there is one date of admission. In order to reach this conclusion, we would like to also... The relevant provision here, 1227A2A1 must be read in context with the remainder of the statute. Are you saying that the statute should be read or can only be read to mean after the date of first admission? Or the date the alien was first admitted and that's the only permissible interpretation? No, your honor. We are not advocating for a first entry only rule. What we are saying is that an admission that begins an existing period of presence. For instance, Mr. Rao's 2005 admission. Okay, so that's your interpretation, but why is that the only permissible interpretation? Because if Congress wanted section 1227A2A1 to operate as an any entry rule, it would have used language similar to what exists in section 1227A1G1, which provides for any admission for the commission of marriage fraud. And 1227A1E1, which says any entry providing for the portability for smuggling aliens across the border. The BIA says, well, when there's multiple admissions, we have to explain which is the date of admission for purposes of 1227A2A. Because many aliens may have multiple admissions, and so they provided an interpretation explaining how they interpreted which admission was pertinent. And why is that impermissible? We're not saying it's impermissible for the BIA to interpret which admission will count as the date of admission, but we're saying it is impermissible for the government to interpret it as every single admission will reset this five-year clock. I'm mindful of my time, and so with that— Your time is up. Let me just ask my colleague, do either have additional questions for Ms. Posner? No, thank you. All right. Thank you, Ms. Posner, very much. So we're not going to hear from the government. Ms. Bayram. May it please the court, I am Sarah Bayram, appearing on behalf of Merrick B. Garland, the United States Attorney General. This case, in a nutshell, is that the petitioner argues, as a micro-nation citizen covered under the compact, that his non-immigrant admission into the United States after a brief vacation should not constitute a new admission. In essence, what he's trying to do is to get the admission benefits that legal permanent residents receive, not seeking admission after a brief trip abroad. But no authority allows for this exception that he's trying to craft. The controlling statutes and precedent make no exception for him. The compact requires that he be admitted as a non-immigrant, and Section 101A.13 requires that he be admitted upon each and every entry into the United States with no exceptions. This court has failed to extend the compact in an analogous case, and so his date of admission is June 2015. Fully consistent with 101A.13 in the statutory language is matter of IAGI. In IAGI, the board makes clear that the controlling date for admission for Section 1227, Removability for Having Committed a Crime of Moral Turpitude, is the admission, the physical entry, that put him in the United States to commit his criminal offense. Well, here again, that's June 2015. As this holding is completely consistent with relevant statutory law, it warrants Chevron deference as a reasonable interpretation. Thus, Petitioner's Removability is established, and this court should deny the petition for review. I want to first turn to Section 101A.13, which provides for the definition of admission, because that statutory language expressly provides that every time an alien, with one exception, but that language expressly provides that all aliens outside of the exception must seek admission into the United States, and the only exception that Congress sought to provide for was legal permanent residence. Our petitioner does not get this benefit. He is not a legal permanent resident, so he has to be admitted every time that he comes in, and so his most recent admission was June 2015. That's clearly an admission. No one disputes that, and as that is his most recent admission, that supersedes his prior admissions, and that's exactly what the statutory language holds, and that's what Congress intended. Only legal permanent residents, when they come into the country, are not seen as seeking admission. So to the extent that Petitioner is trying to, in his words, tether his current admission to a prior admission, he doesn't get to do that, according to Congress, and only legal permanent residents get to do that. And nothing in the compact changes this. The compact was promulgated and then revised, so Congress had two chances to change the language or to somehow alter non-ingrant admission requirements. They didn't do that. And, of course, the compact also expressly states that nothing in this compact limits, precludes, modifies, changes grounds of inadmissibility, deportability. It also doesn't impinge on the authority of the government to limit non-immigrant admissions or to enforce the laws. And so when you take the compact's clear language and, obviously, the non-ambiguous language of 101-813, Petitioner, every time he enters, seeks a new admission. He has to present himself at the border as an applicant for admission, and that's the controlling admission. I would just note, before I get to Amador Baiagi, just for your honors, the court in an analogous case in Terrence refused to extend language of the compact. This was with respect to Palau, but the petitioner in that case argued that the compact allowed for immunity of Section 1326, which deals with a reentry, and there the court found that, look, there's no logic, that somehow the waiver of documentation, work requirements, the non-immigrant entry allowances, that that somehow provides for a broad waiver of the other exclusionary provisions. And in that vein, we would argue that, again, there's nothing in the compact that supersedes the language that requires petitioners to seek an admission every time he enters. And finally, just with respect to this quickly, it's a slippery slope. You know, not only did Congress only provide for legal permanent residence to not have to seek admission, but while our petitioner is from Micronesia, he can enter as a non-immigrant, you know, obviously fairly easy under the compact, there's a number of other countries under the Visa Waiver Program, for example, that can easily enter as well. And so, if you somehow find that, you know, for this petitioner, it's only the first entry that controls, there's nothing to prevent the floodgates from opening for all of these other non-immigrants from, you know, similarly situated Visa Waiver countries to argue the same. And that's really going to eviscerate the exception that Congress put in saying, no, it's only for legal permanent residence. And then just briefly turning to Manor Biagi, the holding squarely controls the issue here, which is when an alien has more than one admission, which admission controls. They say that clearly on the first page of the decision. And if you look to page 400, they reiterate that again. And then they state the holding and they provide an illustrative example on 407 and 408 of the decision, which is essentially the same fact scenario as we have here. It's a hypothetical involving an alien, a non-citizen, excuse me, with non-immigrant admissions. He was not an LPR. He had not adjusted his status. So it's the same. And under that hypothetical, and applying that hypothetical to our situation, Mr. Raut's 2005 admission doesn't control. So the holding of this case clearly and precisely answers the question here. It warrants Chevron deference as a reasonable interpretation. First and foremost, it's a precedential decision issued by the board in the exercise of its congressionally delegated authority, carries the force of law. And in addition to that, the board took into account the language and structure of the act. They look to the broader provisions. Counsel, is Aliagi precedential itself, or is it because it relied on a precedential decision? Well, matter of Aliagi is a published precedential decision. And it's applied in our case, which is an unpublished decision. But in our case, matter of Aliagi squarely controls and answers the precise issue that is raised in our case. And so we can give matter of Aliagi that is appropriate for the court to award Chevron deference, even though it arises in this unpublished case. Your supplemental briefing raised an interesting issue with that. Maybe when an agency like the BIA promulgates a rule of adjudication, then there is no such thing as dicta. Do you want to explain that any further? Yes. So in our briefing, we address this issue of dicta. And it's our position that when the agency gives an interpretation, that there isn't this dichotomy between holding and dicta as we would know it in circuit court law. So when the agency gives its interpretation, obviously here where the board found that it was appropriate to make it a precedential decision, that the court looks to the entirety of that interpretation when affording a Chevron deference, that everything that the board has indicated is important. It's the board's position on it as the expertise in immigration. And so the court looks to the entire interpretation under Chevron deference and looks to whether it's reasonable. And notably, also, I would add that in cases discussing Chevron deference, and certainly in Chevron itself or Meade, there isn't a distinction or the court has never made a distinction between only looking at the holding versus the dicta. We look to the interpretation as a whole. And that interpretation, certainly in this case in Manor of Iaji, warrants Chevron deference as a reasonable interpretation of the statute that we're looking at here, which is 1227A2. And I would just briefly add, in addition to the fact that it warrants Chevron deference, we would ask this court to join with its sister circuit, the Fourth Circuit, which has held that Manor of Iaji warrants Chevron deference as well. If there's no questions, I'll sum up. Any questions by my colleague? All right. Thank you, Ms. Byron. Thank you. Very well. Mr. Randall, you have five minutes of rebuttal. Thank you, Your Honors. My name is Patrick Randall. I'm a certified law student, and I will be appearing on behalf of Mr. Jim Rao today. I would like to start with the questions surrounding Iaji and whether or not it's an impermissible or a permissible interpretation. And to the extent that Your Honors believe that it is a permissible interpretation of Section 1227A2A1, we would like to highlight that the statute, or I'm sorry, the Iaji is not clear as to whether separate dates of admission, the more recent one, should always govern in that case. And I'd also like to point out that in the underlying BIA decision— Can I get a clarification here? Your co-counsel said the same thing, that it wasn't permissible. When we look at what basically an administrating court decides, in this case the BIA, and they're construing a statute that they've found to be ambiguous, as long as their interpretation is within the realm of reason, it is in fact permissible, is it not? Right, correct. That's step two. So why—I know you don't agree with what they decided, but why is what they decided, in quotes, impermissible, in quotes? Right, well, I don't want to spend too much time getting bogged down into whether Aliaji is or is not permissible. I think our argument— So you argue that you concede that it is permissible, and you just don't like it. Well, for the sake of argument, I think we can say that it's permissible, and even if it is a permissible interpretation of the statute, 2005 should be the relevant date of admission in our case. And if this court does not agree with that, then it should at least remand to the BIA with instructions to clarify Aliaji as it applies to Mr. Rao's case. So if we're taking the stance that Aliaji is permissible, the underlying decision in our case, the unpublished decision, does not squarely address how the Compact of Free Association plays in at all into whether or not 2005 or 2015 should be the relevant date of admission. So just by that alone, I think it's showing that the underlying decision did not focus on everything. And the other thing I would like to focus in on is that at footnote 6 in Aliaji, in page 406 as well, the BIA expressly said that sometimes the first date of admission can be the relevant date of admission. And so if the BIA wanted to—I think, Judge Okuda, you had earlier asked that essentially Aliaji was saying it's essentially almost the any-entry rule with the exception of adjustment of status. And if Aliaji wanted to do that, then it could have said so, and it didn't say that. Instead, what Aliaji said was in regards to we're going to overturn the any-entry rule because it's inconsistent with the change in the statutory language from, quote, after entry to the date of entry and then the date of admission. So their rule is if the alien committed the crime within five years after the date of the admission by virtue of which he or she was then present in the United States. So if that's a permissible interpretation, the date of the admission by virtue of which Mr. Rao was then present in the United States was the 2015 admission. Isn't that right? Well, I'm not sure that's entirely correct because the 2015 departure was for a vacation. And so, Mr. Rao, but when you would take a vacation, right, you're inherently going to come back to wherever you are taking a vacation from. Pat deemed opposing counsels as, because he was not a legal permanent resident, that's deemed to be a readmission, an admission. Do you disagree with that? Correct. No, we don't disagree with that. We're not arguing that the second admission is somehow an exception and it's not an admission as for lawful permanent residents under 8 U.S.C. section 1101. What we're arguing instead is that 2005 is the relevant date of admission. Congress has utilized language in the statute when it wants the more recent date of admission to always govern. For example, section 1227A1G utilizes language, you know, two years after I believe something to the effect of any admission. And so if we do what you I think are asking us to do, which is to remand for the BIA to, if you will, clarify its position with respect to the impact of COFA, if it did apply that, wouldn't there be at least two interpretations of the statute? And what would be the logic of that? You're saying that there would be two other people that were entitled to a COFA and people that were not entitled to a COFA. Right, exactly. I'm mindful of my time, but I would like to answer Your Honor's question. Please do. Thank you. So regarding the double interpretation of the statute, I'm not sure if that's entirely the case. I think really what we're asking is one, for the Compact of Reassociation to be considered, and then two, for Ali Aji, the BIA, to clarify its own rule as it applies to a non-citizen who has two admissions pursuant to the statutory definition. And we believe that that is the case because Ali Aji explicitly overruled the any entry rule that was present in SHANU. And if it really, you know, wanted to keep that rule with the exception of adjustment of status, I think the case would have been much clearer in that regard. If Your Honors have no further questions. Let me ask, do either of my colleagues have additional questions? No. Thank you, Your Honors. All right, we're going to submit this case, but I want on behalf of the Court to thank Ms. Posner and Mr. Randall for their very fine job. I think the government would join in that, I believe, but the reality is it's a wonderful thing to see bright, young law students involved in this. We hope that you will continue to provide pro bono service to people. You and whoever helped you get ready did a great job, and you have a great future. So we thank you. Thank you, Your Honors. Thank you, Your Honors. The route versus Garland is submitted.
judges: M. Smith, Ikuta, Vratil